**Gerald ALBERS, Plaintiff-Appellant,**

v.

**Harold WHITLEY, et al.,
Defendants-Appellees.**

No. 82–3551.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1983.

Decided Oct. 1, 1984.

Eugene A. Wright, Circuit Judge, filed a dissenting opinion.

Gene B. Mechanic, Portland, Or., for plaintiff-appellant.

Kay Kiner James, Asst. Atty. Gen., Salem, Or., for defendants-appellees.

Before WRIGHT, CANBY and BOOCHEVER, Circuit Judges.

CANBY, Circuit Judge:

Plaintiff Albers appeals from a final judgment entered by the district court upon a directed verdict in favor of defendants. *Albers v. Whitley,* 546 F.Supp. 726 (D.Or. 1982). The lower court's ruling was issued following a 3-day jury trial. Albers sought compensatory and punitive damages against defendants pursuant to 42 U.S.C. § 1983, alleging violations of his eighth and fourteenth amendment rights. He also requested damages under the Oregon Tort Claims Act for pendent state claims. We reverse in part the district court's judgment verdict and remand for a new trial. We affirm as to the pendent state claims.

## FACTS

Albers was a prisoner whose claims arise from his having been shot in the knee by defendant prison officials while they were quelling a prison disturbance in "A" Block of the Oregon State Penitentiary on June 27, 1980. Cellblock "A" consists of two tiers and houses more than 200 inmates. The only reasonable mode of access between the two tiers is a connected stairway. The stairway is separated from the lower tier by a barred door. Prison officers may enter the cellblock from either end, on either tier and can control entry into either tier by means of barred walkways. Defendant Whitley was security manager of the penitentiary; defendant Cupp was superintendent; defendant Keeney was an assistant superintendent; and defendant Kennecott was a corrections officer.

On the night of June 27, 1980, some inmates in cellblock "A" became agitated about what they viewed as mistreatment of other inmates by prison guards. Because of the ensuing commotion and the inmates' tense mood an early "cell-in" order was given.

Some inmates resisted and one inmate, Richard Klenk, became particularly upset. He confronted two guards and assaulted one. After the assaulted guard left the cellblock, some inmates began to break furniture. The remaining guard was moved to a safer area by several helpful inmates but was kept hostage.

Prison authorities were notified and defendant Whitley went to speak with Klenk. A few attempts were made to demonstrate that the inmates whom the prisoners were originally concerned about were unharmed, but the disturbance continued.

Whitley checked the condition of the prison guard being held hostage and found him unharmed. He then began organizing an assault squad. At some point the prison officials discovered that Klenk had a knife and had claimed that one inmate had been killed and that others would die.

Whitley returned to the cellblock to see that the hostage guard was still unharmed, and was told by other inmates that they would protect the guard. Whitley then spoke with Albers who had left his cell at an inmate's request to see whether he could aid in quieting the disturbance. Albers asked Whitley if he would return with a key to the lower tier cells to allow those on the lower tier, including several elderly inmates, to remove themselves from the com-

motion. Whitley said that he would return with the key. When Whitley left, he noticed a barricade had been constructed, limiting access to the cellblock.

The prison officials agreed that their only feasible alternative was to arm a squad with shotguns and invade the cellblock. Cupp ordered the squad to "shoot low."

When Whitley reentered the cellblock he was followed by three armed guards. There is evidence that Albers asked for the key and Whitley screamed "shoot the bastards" and ran toward the stairs in pursuit of Klenk. The stairway was the only route to the cell where the guard was held hostage; it was also the only route by which Albers could return to his own cell.

Warning and second shots were fired. Whitley chased Klenk to the upper tier. Albers ran up the stairs behind Whitley and was shot in the knee by Kennecott. Klenk was subdued by Whitley with the help of several inmates. The hostage guard was released unharmed. One other inmate had been shot on the stairs and others on the lower tier also were harmed by gunshot. Albers sustained severe nerve damage to his lower left leg, with residual paralysis, and mental and emotional distress.

The issues on appeal are (1) whether there was evidence from which a jury could conclude that Albers was deprived of any constitutional rights; (2) whether defendants are protected by qualified immunity; and (3) whether Albers' state law claims are barred by the Oregon Tort Claims Act.

## DISCUSSION

To establish a prima facie case under section 1983, Albers was required to show (1) that the conduct he complained of was committed by defendants and under color of state law, and (2) that this conduct deprived Albers of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). There is no question that defendant prison authorities were acting under color of state law. Our focus is therefore upon deprivation of federally protected rights. It is not enough for Albers to show that he may have been the victim of a state-law tort; he must show a violation of the Constitution or a federal statute. *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979).

The right upon which Albers relies is his right under the eighth amendment not to be subjected to cruel and unusual punishment.[1] Punishment has been characterized as cruel and unusual when it is incompatible with "the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958), and when it involves an unnecessary and wanton infliction of pain or is grossly disproportionate to the severity of the crime. *See Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983); *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). A formal intent to punish is not required; unjustified striking, beating or infliction of bodily harm upon a prisoner by or with the authorization of state officials may be sufficient to violate the eighth amendment. *See King v. Blankenship*, 636 F.2d 70, 72 (4th Cir.1980). It is difficult to draw a precise line at which the application of force becomes unconstitutional, but "unnecessary, unreasonable, and grossly" excessive force qualifies. *Williams v. Mussomelli*, 722 F.2d 1130, 1134 (3d Cir.1983).

All of these general standards require adaptation however, to fit the facts of Albers' case. Without question, shoot-

---

**1.** We agree with the district court that Albers is not asserting an independent violation of fourteenth amendment due process. 546 F.Supp. at 732 n. 1. There is consequently no need to consider whether Albers' protections under that clause differ in any way from those under the eighth amendment. *See Williams v. Mussomelli*, 722 F.2d 1130 (3d Cir.1983).

ing a prisoner in the knee would qualify as cruel and unusual if it were simply done as punishment for crime or bad behavior. Here, however the shooting occurred in the course of a forcible response to a prison emergency. "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Moreover, those authorities must be allowed a reasonable latitude for the exercise of discretion in determining the appropriate response to a crisis; a measure that in retrospect appears not to have been necessary might have seemed very necessary to a reasonable prison administration at the time it was taken. *See id; Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

On the other hand, the latitude accorded to prison authorities does not mean that they are authorized to use any amount of force, however great. *Ridley v. Leavitt*, 631 F.2d 358, 360 (4th Cir.1980). In our view, a proper standard deems the eighth amendment to have been violated when the force used is "so unreasonable or excessive to be clearly disproportionate to the need reasonably perceived by prison officials at the time." *Jones v. Mabry*, 723 F.2d 590, 596 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). Thus if a prison official deliberately shot Albers under circumstances where the official, with due allowance for the exigency, knew or should have known that it was unnecessary, Albers' constitutional right would have been infringed. Similarly, if the emergency plan was adopted or carried out with "deliberate indifference" to the right of Albers to be free of cruel unusual punishment, then the eighth amendment has been violated. *See Haygood v. Younger*, 718 F.2d 1472, 1482–83 (9th Cir.1983), *petition for rehearing en banc granted*, 729 F.2d 613 (9th Cir.1984); *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir.1984). This "deliberate indifference" standard arose in cases where prisoners were denied proper medical care, and it was designed to differentiate violations of constitutional rights from mere malpractice. *See Estelle v. Gamble*, 429 U.S. 97, 104–106, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976). The standard may appropriately be applied to test the constitutionality of other exercises of professional judgment by prison officials that result in harm to prisoners. *See Haygood v. Younger*, 718 F.2d at 1482–83; *Miller v. Solem*, 728 F.2d at 1024. So applied, "deliberate indifference" goes well beyond negligence and amounts to the " 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).

Albers contends that he presented sufficient evidence to permit a jury to find that unreasonable, disproportionate and unnecessary force was used against him, and that it was used with deliberate indifference to his constitutional right. The district court, referring to uncontradicted evidence that defendants were faced with a prison uprising and that an inmate armed with a knife had threatened to kill a hostage, held that the defendants' actions, even in hindsight, could not be viewed as unreasonable. The court accordingly directed a verdict for defendants. Our review of the record convinces us that the district court erred in so doing.

The district court could properly direct a verdict for defendants only if, after viewing the evidence as a whole and drawing all possible inferences in favor of Albers, it found no substantial evidence that could support a jury verdict in his favor. *California Computer Products, Inc. v. IBM*, 613 F.2d 727, 732–34 (9th Cir.1979). The district judge was not entitled to resolve contradictions in the evidence, *Autohaus Brugger, Inc. v. SAAB Motors, Inc.*, 567 F.2d 901, 909 (9th Cir.) *cert. denied*, 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978), or to pass upon the credibility of witnesses. *Fountila v. Carter*, 571 F.2d

487, 490 (9th Cir.1978). Those are jury functions.

 The record discloses numerous instances of conflicting testimony regarding excessive use of force. While the evidence regarding the threatening behavior of inmate Klenk was uncontradicted, there was testimony that the general disturbance in the cell block was subsiding by the time that the defendants stormed it with shotguns. The jury might have believed that conditions were so improved that it was or should have been apparent to defendants, and have called for less force. *See Ridley v. Leavitt,* 631 F.2d 358 (4th Cir.1980). Both plaintiff and defendants presented expert testimony on the propriety of the prison authorities' actions during the prison disturbance. It was the jury's function to weigh the experts' testimony on the basis of each expert's experience, knowledge, and opportunity to observe. *See Cockrum v. Whitney,* 479 F.2d 84, 86 (9th Cir.1973).

Albers' expert, Mr. Lou Brewer, testified that the use of deadly force under the circumstances of this case, taking its timing into account, was unnecessary to prevent imminent danger to either the hostage or other inmates. He also testified that the use of deadly force was excessive under the circumstances at the time it was used, and that reasonable corrections policy would dictate that there be a prior verbal warning immediately before shooting. Albers second expert, Mr. Lee Perkins, testified that the prison authorities should have acted differently, and that they were "possibly a little hasty in using firepower" on the inmates.

Although this testimony was controverted by defendants' experts, Mr. W. James Estelle, Jr. and Mr. Roger W. Crist, it is more than possible that a jury could have concluded that the prison officials' "riot plan" was hopelessly flawed and that the use of deadly force against Albers was unreasonable, unnecessary, improper and engaged in with deliberate indifference to his constitutional interests. We hold that there was sufficient evidence presented from which a jury applying the proper eighth amendment standard could have found that plaintiff's eighth amendment rights were violated. Consequently, we must reverse the judgment of the district court and remand for a new trial.

### QUALIFIED IMMUNITY

 One final note should be taken of the qualified immunity defense claim. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. This is an objective standard.

 As we noted in *Haygood, supra,* however, there is overlap between our eighth amendment analysis and the qualified immunity defense. A finding of deliberate indifference is inconsistent with a finding of good faith or qualified immunity. The two findings are mutually exclusive. "Those 'deliberately indifferent' to the [plaintiff's right] ... could not show that they had not violated 'established statutory or constitutional rights of which a reasonable person would have known.' " *Haygood v. Younger,* 718 F.2d at 1483–84. *See Miller v. Solem,* 728 F.2d at 1025. Similarly, deliberate indifference to Albers' right to be free of cruel and unusual punishment would violate a right "clearly established at the time of the conduct at issue." *Davis v. Scherer,* 468 U.S. ——, ——, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984).

Therefore, a new trial must determine whether Albers was subjected to cruel and unusual punishment under the "deliberate indifference" standard by defendants' use of excessive force against him. If it is determined that the prison authorities' conduct did not violate this standard, they are absolved of all liability under § 1983. If an eighth amendment violation is found, there is no qualified immunity defense available.

## PENDENT STATE CLAIMS

The district court correctly dismissed Albers' pendent state tort claims because recovery is barred by the Oregon Tort Claims Act. *See* O.R.S. § 30.265(3)(a).

REVERSED IN PART, AFFIRMED IN PART, and REMANDED.

EUGENE A. WRIGHT, Circuit Judge, dissenting:

I would affirm substantially for the reasons stated by Judge Panner in his excellent opinion below. *Albers v. Whitley*, 546 F.Supp. 726 (D.Or.1983). I add these comments. I agree with the district judge that: (1) no constitutional rights were violated by the prison officials' use of deadly force during a prison riot, and (2) the prison officials enjoy immunity to Albers' claim for damages.

### I. *The Eighth Amendment Claim*

This is the first case in which a federal court has countenanced a cause of action for cruel and unusual punishment arising from a prison disturbance. It is not our function to second guess the prison officials' response to a riot situation. Administration of a prison is "at best an extraordinarily difficult undertaking." *Hudson v. Palmer*, —— U.S. ——, ——, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984); *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974).

The district court viewed the evidence correctly in the light most favorable to the plaintiff and concluded that no triable issue existed because the prison officials responded in good faith to a genuine emergency. *Albers v. Whitley*, 546 F.Supp. 726, 735 (D.Or.1982). This was a riot. Prisoners were armed with a knife and pieces of furniture. A guard was held hostage. One inmate was reported dead.

Prison officials attempted and failed to achieve a peaceful settlement. They elected not to use tear gas because of the great discomfort it would cause the majority of inmates who had obeyed the cell-in order. *Albers*, 546 F.Supp. at 733–34.

Close judicial scrutiny is inappropriate where prison officials react in good faith to a true crisis. *Arroyo v. Schaefer*, 548 F.2d 47, 50 (2d Cir.1977); *LaBatt v. Twomey*, 513 F.2d 641, 647 (7th Cir.1975). *See also Pepperling v. Crist*, 678 F.2d 787, 789 (9th Cir.1982) (extreme deference given to prison officials in matters of internal security). Judge Friendly has observed, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

### II. *Qualified Immunity*

Under *Davis v. Scherer*, —— U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), prison officials enjoy immunity unless, at the time Albers was shot, it was "clearly established" that prison officials could be held liable for using deadly force in quelling a prison riot. The standard is objective and is appropriate for summary disposition by a trial judge. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). We view the "objective reasonableness of [the] official's conduct as measured by reference to clearly established law." *Davis*, —— U.S. at ——, 104 S.Ct. at 3018 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

The majority, however, merges the question of "deliberate indifference" with the question whether a right is "clearly established" for qualified immunity purposes. This incorrectly inserts a subjective element into the determination of an official's immunity. It also transforms qualified immunity from a question of law for the judge, to a question of fact for the jury.

There is no definitive guide as to when a right is "clearly established." *Zweibon v. Mitchell*, 720 F.2d 162, 168–69 (D.C.Cir. 1983). The Supreme Court has indicated that a high standard should be applied in prison cases such as this. In *Davis*, the Court recognized that prison officials routinely make close decisions and that they "should not err always on the side of cau-

**1378**

tion." *Davis*, —— U.S. at ——, 104 S.Ct. at 3021. Those persons "must often act swiftly and firmly at the risk that action deferred will be futile or constitute virtual abdication of office." *Id.*

No court has awarded damages to a prisoner injured in a prison riot. As evidenced by the divergence of opinion among us on this panel, the constitutional rights of prisoners during a prison riot are not well settled. These rights are not "clearly established" under *Davis*.

The majority's approach is not compelled by *Haygood v. Younger*, 718 F.2d 1472, 1483–84 (9th Cir.1983), *vacated*, 729 F.2d 613 (9th Cir.1984). A vacated decision has no vitality as precedent. *See Hill v. Western Electric Co., Inc.*, 672 F.2d 381, 387 (4th Cir.1982); *cert. denied*, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982).

I would affirm.