852 F.2d 1205
 Frank H. WOOD, Individually and on behalf of all others
similarly situated, Plaintiff-Appellee,
v.
Franklin Y.K. SUNN; Edwin Shimoda; William F. Haning III;
and Beatrice Chang, Defendants-Appellants.
 No. 87-2056.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1988.
Decided July 27, 1988.
 
 Steven S. Michaels, Deputy Atty. Gen., State of Hawaii, Honolulu, Hawaii, for defendants-appellants.
 Eric A. Seitz and Joan M. Yamaguchi, Honolulu, Hawaii, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 
 OVERVIEW
 
 1
 The appellee Frank H. Wood, a prison inmate at the Oahu Community Correctional Center (OCCC) in the state of Hawaii, filed an action claiming his eighth amendment rights were violated when certain prison staff and administrators acted with deliberate indifference toward his serious medical needs. Wood, who was born with only one kidney, has a history of urological complications which has required hospitalization before and during his incarceration.[1] Pursuant to 42 U.S.C. Sec. 1983, Wood sued the appellants Franklin Y.K. Sunn, the director of the Department of Social Services and Housing of the State of Hawaii, which administers the state's correctional facilities; Edwin Shimoda, administrator of the OCCC; Dr. William Haning, OCCC's medical director and physician consultant; and Beatrice Chang, a registered nurse and administrator of the medical unit. Wood sought damages for pain, suffering, and emotional distress during the period from May 23, 1983 to October 18, 1983. Following a trial to the district court, the judge found the defendants were deliberately indifferent to Wood's medical needs pursuant to Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) and awarded Wood $25,000 in damages, plus costs and attorneys' fees of $49,523.17.
 
 
 2
 The prison staff and administrators claim on appeal that they are entitled to qualified immunity in light of a recent Supreme Court decision, Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). They claim the district court erred in finding deliberate indifference to Wood's medical needs. They also claim the court erred in its use of a multiplier in awarding attorneys' fees. In addition, Dr. Haning and Nurse Chang claim they are not liable because they did not act under color of state law. We affirm on all issues except the imposition of liability on Sunn and Shimoda and the award of attorneys' fees.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 On December 2, 1982, Wood was incarcerated at OCCC. At that time he had urological complications stemming from a work-related injury and subsequent hernia operation in 1980. His symptoms included urinary tract infections, recurrent inflammations, urine retention, and neurological problems which required hospitalization several times prior to his incarceration. Upon incarceration, Wood provided OCCC's medical staff with a history of his problems and treatment. He was placed in the medical module of the prison.
 
 
 4
 Shortly after he was incarcerated, Wood was hospitalized under the care of a urology specialist, Dr. Andrew Morgan. Dr. Morgan performed two exploratory surgeries and removed a blood clot. Wood continued to see Dr. Morgan until May 23, 1983. At that time, Dr. Morgan recommended that all antibiotics be discontinued and that cultures be taken of any new infections. He stated that Wood might require pain medication.
 
 
 5
 On May 21, 1983, Wood saw Dr. Haning for the first time. Wood complained of pain in his left testicle. Haning, who is a general practitioner, prescribed an antibiotic to treat the infection he suspected was present in the lower urinary tract.
 
 
 6
 On June 6, 1983, Dr. Birendra Huja, another OCCC general practitioner, recommended that Wood see another urologist for a second opinion with respect to Wood's continuing complaints. Although the OCCC medical staff did not contact a second urologist, it made an appointment for Wood to see Dr. Morgan, but failed to arrange transportation.
 
 
 7
 On June 24, 1983, Wood saw Haning twice, complaining of drainage from his left scrotal area. Haning noted the area was warm to the touch and that a red, purulent material was draining from a shallow abscess. Later laboratory tests showed a staphylococcal infection was present in the abscess. Haning prescribed several antibiotics to be given twice a day for ten days. However, no prison records show that Wood received the antibiotics. From January 1983 to December 1985 there are no medical records whatsoever on Wood. Accordingly, there is no documentation of treatments or tests, if any, that Wood received subsequent to Dr. Morgan's or any other doctor's recommendations.
 
 
 8
 From May to October of 1983, Wood continued to report testicular pain and difficulty in urinating to the OCCC staff. He claims his requests for medical attention and treatment were ignored, and that he was taunted and accused of malingering. He required catheterization, which was done only twice a day.
 
 
 9
 On October 18, 1983, Wood was taken to Dr. Lee Simmons, a urology specialist. Dr. Simmons' initial notes describe Wood's problems as:
 
 
 10
 post-surgical and inflammatory neuralgia, left genital femoral nerve. This, I believe, is the patient's source of pain.... Chronic prostatitis, low grade, active, dysfunctional voiding with history of recurrent urinary retention.... Questionable beginning hydradenitis supurativum, left groin, and depression, reactive, situational most likely.
 
 
 11
 Simmons thought Wood needed ongoing supervision and urological overview in light of his chronic prostatic infections and problems with voiding. Dr. Simmons also recommended psychological evaluation and treatment.
 
 
 12
 Two days after seeing Dr. Simmons, Wood was admitted to the hospital for two weeks of treatment for acute urinary retention and painful, potentially dangerous infections. Since then, Wood cannot urinate and is constantly catheterized.
 
 STANDARD OF REVIEW
 
 13
 The trial judge's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Fed.R.Civ.P. 52(a), Cooling Systems and Flexibles, Inc. v. Stuart Radiator, Inc., 777 F.2d 485, 487 (9th Cir.1985). A district court's determinations on questions of law and on mixed questions of law and fact which implicate constitutional rights are reviewed de novo. LaDuke v. Nelson, 762 F.2d 1318, 1322 (9th Cir.1985). See, e.g., Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 854 (9th Cir.1985) (the issue of whether inmates were provided meaningful access to the courts is reviewed de novo).
 
 
 14
 A district court's award of attorney fees will not be disturbed absent an abuse of discretion. Clark v. City of Los Angeles, 803 F.2d 987, 990 (9th Cir.1986).
 
 DISCUSSION
 
 15
 1. Whether This Court Must Consider the Qualified Immunity Issue in Light of Anderson v. Creighton
 
 
 16
 The appellants argue they are not liable for damages under 42 U.S.C. Sec. 1983. They claim this court must either decide or remand on the issue of whether they have qualified immunity in light of Creighton. The district court did not decide whether the defendants were entitled to qualified immunity. That defense was not argued at trial; it was presented only in the answer to the complaint. However, the appellants claim the issue is preserved on appeal because this defense was raised in the answer and can be deemed to have been ruled upon by the district court.[2] They also claim:
 
 
 17
 Under Judge Canby's decision for the Court in Albers v. Whitley, 743 F.2d 1372 (9th Cir.1984), reversed on other grounds, 475 U.S. 312 [106 S.Ct. 1078, 89 L.Ed.2d 251] (1986), it was impossible in this Circuit, at the time this case was presented to the District Court, to make any claim that state officials in discretionary roles had any real protection under the objective qualified immunity rule of Harlow v. Fitzgerald, 457 U.S. 800 [102 S.Ct. 2727, 73 L.Ed.2d 396] (1982), in cases brought pursuant to Estelle v. Gamble, 429 U.S. 97 [97 S.Ct. 285, 50 L.Ed.2d 251] (1976).[3]
 
 
 18
 The appellants claim Whitley prevented a defense of qualified immunity because it held that "[a] finding of deliberate indifference is inconsistent with a finding of good faith or qualified immunity" and "[t]he two findings are mutually exclusive." Whitley, 743 F.2d at 1376. The appellants claim the Supreme Court now has overruled Whitley's immunity analysis in Creighton.
 
 
 19
 The appellants also maintain that this issue, even if raised for the first time on appeal, should be decided as an exception under Romain v. Shear, 799 F.2d 1416 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987). Romain states:
 
 
 20
 This court will generally not consider an issue raised for the first time on appeal. Bolker v. Commisisoner, 760 F.2d 1039, 1042 (9th Cir.1985). Three exceptions to this rule exist: (1) in an "exceptional" case when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in law, or (3) when the issue is purely one of law and the necessary facts are fully developed.
 
 
 21
 Id. at 1419. The appellants invoke the second exception, claiming Creighton changed the law in this circuit, and the third exception. They also claim that manifest injustice will result if this court does not consider the qualified immunity defense.
 
 
 22
 Other circuits have held that a defense raised in an answer but not presented to the district court for consideration, and not ruled upon, is not preserved for appeal. Cavic v. Pioneer Astro Indus., Inc., 825 F.2d 1421, 1425 (10th Cir.1987); King v. Stevenson, 445 F.2d 565, 570-71 (7th Cir.1971). Those holdings are reasonable. A district court justifiably would assume that defenses presented only in an answer had been abandoned.
 
 
 23
 The argument that the defense was impossible to bring because of this circuit's decision in Whitley has no merit. Whitley directs a court's findings; it does not prevent an immunity defense at trial on a section 1983 claim. It holds that a court's finding of deliberate indifference precludes it from also finding qualified immunity, because "[t]hose 'deliberately indifferent' to the [plaintiff's right] ... could not show that they had not violated 'established statutory or constitutional rights of which a reasonable person would have known.' " Whitley, 743 F.2d at 1376. The appellants tried to prove they were not deliberately indifferent to Wood's medical needs. Nothing prevented them from also arguing that they were entitled to qualified immunity.
 
 
 24
 Further, Creighton does not hold that a finding of deliberate indifference no longer mutually excludes a finding of qualified immunity. The Supreme Court decided an entirely different issue in this case: precisely what must be "clearly established" for a law enforcement officer to be entitled to summary judgment on the issue of qualified immunity in the context of a warrantless search.[4] The Supreme Court held that qualified immunity is available if a reasonable police officer could have believed that the search was justified, in light of clearly established law and the information that the officer possessed. Despite Creighton, the Whitley rule that "a finding of deliberate indifference is inconsistent with ... qualified immunity" remains the law of the circuit.
 
 
 25
 Accordingly, the second Romain exception cannot be invoked because the decision in Creighton did not change the law of this circuit. The third Romain exception is also inapplicable. The facts surrounding qualified immunity are not fully developed because the defense was never argued. Finally, there is no miscarriage of justice when the appellants failed to present their own defense. The issue is not preserved for appeal.
 
 
 26
 2. Whether the Finding of Deliberate Indifference Was in Error
 
 
 27
 The appellants insist the district court made both factual and legal errors in concluding that they were deliberately indifferent to Wood's serious medical needs. The factual errors they claim are the finding that Wood did not receive medication as prescribed and the court's suggestion that Wood did not see a doctor as often as needed for his complaints. The legal errors they claim are misapplying the "deliberately indifferent" standard set forth in Estelle and not deferring to the judgment of the OCCC's administrators or its medical staff.
 
 
 28
 a. The Factual Errors
 
 
 29
 The appellants claim the district court should not have inferred "wholly from the absence of patient records" that medicine was not delivered as prescribed. However, the court had other evidence upon which to base this finding. Chang, the administrator of the medical unit, testified that the absence of documentation "probably" meant that Wood never received his medication. Neither she nor Dr. Haning had any personal knowledge that Wood received it. Based on this testimony and the lack of medical records, the district court was not clearly erroneous in concluding that Wood did not receive his medication as needed. Even though Wood testified he received "some" medication, the court could reasonably infer that his serious medical needs were not met, especially in light of Dr. Simmons' testimony that an antibiotic not taken at regular intervals loses its effectiveness and is likely to exacerbate an infection.
 
 
 30
 Further, it was not clearly erroneous to conclude that Wood did not receive the doctor's attention he needed from May 23 to October 18, 1983. Dr. Haning testified he last examined Wood on June 24, 1983. He testified he talked only briefly with Wood during the summer of 1983 when they happened to be in the medical unit at the same time. Haning said he did not refer Wood to a specialist because it might reinforce Wood's idea that his pain was physical rather than psychological. Haning and Chang admit they were indifferent to Wood's complaints because Dr. Haning had decided Wood's pain was psychological and therefore did not require medical attention. Appellant's Brief at 17-18.
 
 
 31
 b. The Legal Errors
 
 
 32
 The appellants maintain the district court misapplied the standard of deliberate indifference. They contend they acted in good faith since it was Haning's "medical judgment [to be] indifferent to inmate Wood's complaints," so as to "be helpful with regard to inmate Wood's needs," since he believed Wood's pain was psychological. They maintain that conflicts among doctors regarding proper medical techniques do not violate the eighth amendment. They state "it is true that the state officials ignored inmate Wood's demands" but that "[p]risons being what they are, state officials must be deliberately indifferent to many, many things."
 
 
 33
 To state a claim under 42 U.S.C. Sec. 1983 based on a violation of his eighth amendment right to adequate medical treatment, Wood must show that the appellants acted with deliberate indifference to his serious medical needs. Estelle, 429 U.S. at 106, 97 S.Ct. at 292. This indifference must be more than mere negligence. Id. Deliberate indifference involves the "unnecessary and wanton infliction of pain." Id. at 104, 97 S.Ct. at 291 (citing Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). Isolated occurrences of neglect do not amount to deliberate indifference. Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987).
 
 
 34
 The issue here is whether OCCC's non-treatment of Wood amounts to mere malpractice, or is a violation of constitutional rights. See Estelle, 429 U.S. at 104-06, 97 S.Ct. at 291-92; Whitley, 743 F.2d at 1375. Deliberate indifference goes well beyond negligence because it is the "unnecessary and wanton infliction of pain" which the eighth amendment proscribes. Whitley, 743 F.2d at 1375 (quoting Estelle, 429 U.S. at 104, 97 S.Ct. at 291).
 
 
 35
 The government has an obligation to provide medical care for those whom it punishes by incarceration. Estelle, 429 U.S. at 103, 97 S.Ct. at 290. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id. 104-05, 97 S.Ct. at 291-92. On the other hand, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain. Estelle, 429 U.S. at 105, 97 S.Ct. at 291.
 
 
 36
 Even before incarceration, the evidence shows that Wood's medical problems were serious. During the hernia operation in 1980, a Marlex mesh was placed in him which he testified contributed to his recurrent infections and inflammation of the genital area. This mesh is nonabsorbable, and the body attempts to sequester and discharge it. Even surgical procedures cannot remove all of it. Wood was hospitalized in Seattle, Washington for over a month in July and August of 1980 after the operation, where three surgical procedures were performed. In September 1980, he was hospitalized in Florida. He was hospitalized again shortly after his incarceration, exploratory surgery was performed, and a blood clot removed. He was under Dr. Morgan's care until May 23, 1983. On June 6, Dr. Huja thought Wood's continuing problems serious enough to recommend a second opinion from a specialist. The OCCC medical staff apparently agreed since it made an appointment for Wood with Dr. Morgan. At trial, Dr. Haning testified that Wood's urine should have been monitored periodically to prevent the onset of urinary tract infections, which he admitted were of particular concern because Wood has one kidney. Dr. Simmons testified if Wood had received adequate general medical care at OCCC, the subsequent urinary retention might have been avoided or ameliorated. Given these facts, the arguments that Wood's needs were not serious and non-medical completely lack merit.
 
 
 37
 Whether or not Wood's pain was physically based, it was real.[5] The pain persisted despite Dr. Haning's recommendation that it could be cured by ignoring Wood's complaints. Wood's serious medical needs were not met because the appellants delayed and/or denied him access to medical or psychological help. Dr. Simmons testified that in accordance with minimum medical standards existing in Hawaii at the time:
 
 
 38
 I think that he should have had three primary elements of care. One, evaluation of complaints as they might arise, expecting that there would be ongoing recurrent problems. Two, periodic surveillance from the standpoint of monitoring infection in both the urinary tract and the wound, problems of the left groin, and three, emotional support for--or let's say general medical support for his ongoing problems that cannot be readily resolved, i.e., the pain of the left groin and testicle area.
 
 
 39
 Dr. Simmons also testified that Wood's many attempts to get medical attention without success demonstrates a "manifest indifference to just the simple dignities of being a human being, as well as being a patient in need of medical care."
 
 
 40
 The appellants also claim the district court decision usurped the authority reserved to prison administrators under Estelle to make medical assessments. This contention lacks merit. Nowhere does Estelle hold that a federal court must defer to the judgment of either prison doctors or administrators in deciding whether there was deliberate indifference to an inmate's serious medical needs.
 
 
 41
 Upon review of the entire record, deliberate indifference to Wood's serious medical needs is apparent. This situation is incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle, 429 U.S. at 102, 97 S.Ct. at 290; Whitley, 743 F.2d at 1374. With Wood's medical history, no one could reasonably believe that indifference to his complaints would not create the unnecessary and wanton infliction of pain in violation of the eighth amendment. The finding of the district court is affirmed.
 
 
 42
 3. Whether Appellants Sunn and Shimoda Are Liable
 
 
 43
 Sunn, director of the Department of Social Services and Housing of the State of Hawaii, and Shimoda, administrator of the Correctional Center, claim the district court erred in entering a judgment against them. They claim they cannot be liable vicariously under 42 U.S.C. Sec. 1983, citing Monell v. Department of Social Services, 436 U.S. 658, 693, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).
 
 
 44
 In a section 1983 action in this circuit, vicarious liability may not be imposed in the absence of a state law imposing such liability. Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.1978), cert. denied, 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979). Wood brought no such law to our attention. In the absence of such a law, the state official must play a personal role in the constitutional deprivation to be liable. See id. There is no evidence in the record to impose personal liability on Sunn or Shimoda. The transcripts provided on appeal show that neither official testified at trial. Although Wood claims in his brief that he wrote letters to Sunn and Shimoda, which he claims they acknowledged, he provides no citations to the record. There is no correspondence addressed to Shimoda in the record. There is one letter to Sunn from Wood dated September 19, 1983. Plaintiff's exhibit 22. At trial, Wood testified he received a response to this letter, but it is not included in the trial record. Finally, the district court found that after letters to the defendant Sunn and the state ombudsman, Wood was hospitalized. Contrary to a finding that Sunn was at fault, the record supports a finding that the Department of Social Services and Housing was part of the solution.
 
 
 45
 There is nothing in the record to show that Sunn and Shimoda had personal knowledge of Wood's specific complaints.
 
 
 46
 Because there is no evidence that Sunn and Shimoda violated Wood's constitutional rights, these appellants are not liable under section 1983. The judgment against them is reversed.
 
 
 47
 4. Whether the Issue of Sufficient State Action is Preserved On Appeal
 
 
 48
 To establish a claim under 42 U.S.C. Sec. 1983, a plaintiff must show a defendant acted under the color of state law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Whitley, 743 F.2d at 1374. Haning and Chang argue for the first time on appeal that they were not state actors. We ordinarily will not consider an issue raised for the first time on appeal. In Re Ryther, 799 F.2d 1412, 1414 (9th Cir.1986). Haning and Chang's claim does not fit within any exception to this rule. See Bolker, 760 F.2d at 1042.
 
 
 49
 5. Whether the District Court Erred in Using a Multiplier in the Attorney's Fee Award
 
 
 50
 Title 42 U.S.C. Sec. 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The initial estimate, or lodestar, of a reasonable attorney's fee is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. This lodestar figure is presumptively a reasonable fee. Clark, 803 F.2d at 990. Many factors previously identified by courts as probative on the issue of "reasonableness" of a fee award, see e.g., Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976),[6] are now subsumed within the initial calculation of the lodestar amount. Blum v. Stenson, 465 U.S. 886, 898-900, 104 S.Ct. 1541, 1548-50, 79 L.Ed.2d 891 (1984) ("the novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of the representation," and the "results obtained" are subsumed within the lodestar); Pennsylvania v. Delaware Valley Citizen's Council, 478 U.S. 546, 106 S.Ct. 3088, 3098-99, 92 L.Ed.2d 439 (1986) rev'd after rehearing on other grounds, --- U.S. ----, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (an attorney's "superior performance" is subsumed).
 
 
 51
 In "rare" and "exceptional" cases, an upward adjustment of the lodestar may be justified, but the relevant factors identified in Kerr, 526 F.2d at 70, must be analyzed. Clark, 803 F.2d at 991. Detailed findings of why the lodestar amount was unreasonable must be given. Delaware Valley Citizen's Council, 106 S.Ct. at 3100.
 
 
 52
 The district court decided this matter before the decisions in Delaware Valley and Clark. Perhaps for that reason, it did not analyze the relevant factors or explain why the lodestar amount was unreasonable. Finding the request for a multiplier of fifty percent appropriate, the district court gave these reasons to justify the upward adjustment of the lodestar amount:
 
 
 53
 During the course of this litigation up to the time of the trial itself, defendants were difficult to deal with. This was demonstrated by their refusal to consider settlement, numerous motions for summary judgment, and their delay in naming an expert until a short time before trial. In addition, the court acknowledges that few attorneys are willing to represent prisoners and the importance of having legal services available to them.
 
 
 54
 None of these reasons except perhaps the last one justifies the use of a multiplier. See Blum, 104 S.Ct. at 1550-51 (Brennan, J. and Marshall, J. concurring) (the risk of not prevailing and thus not recovering any fees is a proper basis for an upward adjustment); Clark, 803 F.2d at 991 (upholding the application of a 1.5 multiplier to the lodestar, in part because of the " 'extreme undesirability of th[e] case' "); cf. Delaware Valley, 107 S.Ct. at 3089 (there must be a real risk of not prevailing and an upward adjustment should as a general rule be no more than one-third of the lodestar).
 
 
 55
 The failure to consider the appropriate factors in determining the reasonableness of an award of attorney's fees is an abuse of discretion. Kerr, 526 F.2d at 70. Accordingly, this issue is remanded to the district court for findings consistent with recent Supreme Court and Ninth Circuit caselaw.[7]
 
 CONCLUSION
 
 56
 The appellants Haning and Chang acted with deliberate indifference to Wood's serious medical needs. The complaints of pain by an inmate with this history of medical problems and hospitalization should not be ignored merely because a prison medical staff believe the pain is psychological and/or not serious and admits its deliberate indifference. Regardless of the source of pain, its infliction on an inmate with this kind of medical history is unnecessary, wanton, and in violation of the eighth amendment. Such action does not comport with standards of decency in a maturing society. The district court did not consider the issues of qualified immunity or whether Haning and Chang acted under color of state law. These issues were not preserved adequately for appeal.
 
 
 57
 The evidence was not sufficient to impose liability on Sunn or Shimoda under section 1983. The judgment against them is reversed.
 
 
 58
 The issue of attorney's fees is remanded. The district court abused its discretion in its use of the multiplier. Its fee enhancement is not in accord with recent Supreme Court and Ninth Circuit cases. Upon remand, specific findings should be made with respect to what constitutes a reasonable attorney's fee. AFFIRMED in part; REVERSED in part; and remanded.
 
 
 
 [1]
 At trial, a urologist testified that any infection in Wood's urinary tract might affect the single kidney, placing him at high risk
 
 
 [2]
 In its third defense to this action, the answer states merely: "Defendants are protected from liability by the doctrine of qualified immunity[.]"
 
 
 [3]
 Under the rule in Harlow, government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. The standard is objective. Whitley, 743 F.2d at 1376. Estelle holds that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" which the eighth amendment proscribes
 
 
 [4]
 The purpose of the decision in Creighton was to show the level of generality at which the legal rule of Harlow operates. 107 S.Ct. at 3038-39
 
 
 [5]
 Dr. Simmons confirmed Wood's pain was physically based in that it derived from inflammatory neuralgia of the left genital femoral nerve. His inability to void apparently was psychological
 
 
 [6]
 The factors to consider are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases
 
 
 [7]
 The fee petition appears to contain other reasons which may justify the use of a multiplier. Petitioner states he was precluded from other employment, and that the case was rejected by other attorneys. See Clark, 803 F.2d at 991-92. The district court should determine whether a fifty percent multiplier is justified in light of Delaware Valley, 107 S.Ct. at 3089