**WOOD & LOCKER, INC., Plaintiff,**

v.

**DORAN AND ASSOCIATES; Plateau Resource Development Corp.; Weldon C. Doran; Donald R. Laughlin; Edmund R. Rigatti; Edward O. Ray; Lake Plains Energy, Inc.; B.J. Humbert Co.; Bruce Humbert; and Janelle A. Humbert, Defendants.**

Civ. A. No. 85–1457.

United States District Court, W.D. Pennsylvania.

March 1, 1989.

H. Woodruff Turner, Walter A. Bunt, Jr., Kirkpatrick & Lockhart, Pittsburgh, Pa., for plaintiff Wood & Locker, Inc.

Edward O'Connor, Eckert Seamans Cherin Doran & Mellott, Pittsburgh, Pa., for defendant Weldon C. Doran.

Anthony Polito, Polito & Smock, Pittsburgh, Pa., for defendant Doran & Associates and Plateau Resources.

Eric P. Reif, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant Edmund Rigatti.

Tabakin, Carroll & Curtin, Pittsburgh, Pa., for defendant Donald Laughlin.

## MEMORANDUM OPINION

SMITH, District Judge.

Several motions are before the court at this time. Defendants' motion to dismiss Counts VII and XI of the Complaint will be granted. In addition, defendant Laughlin's motion to dismiss due to defective service of process will be granted. All of the remaining motions by the defendants will be denied.

### I

*Allegations of Complaint*

The Complaint, which consists of one hundred and thirty-two (132) paragraphs and is sixty-seven (67) pages in length, can be summarized briefly as a breach of contract suit. Plaintiff Wood and Locker, Inc. and Energy Minerals, Inc., are engaged in the business of raising capital for investment in oil and gas programs. Defendants Doran and Associates, Inc. and Plateau Resource Development Corp. are engaged in the business of designing and promoting oil and gas investment projects, acquiring sites for oil and gas wells, drilling such wells, and operating, supervising, and maintaining them.

Defendants Lake Plains Energy, Inc., B.J. Humbert Co., and Appalachian Energy, Inc., are engaged in the business of acquiring sites for oil and gas well, drilling such wells, and operating, supervising and maintaining them.

Defendants Weldon Doran, Donald Laughlin, Edmund Rigatti, and Edward Ray owned all or part of the stock of, or

controlled and dominated, or were the agents, servants, or officers of Doran and Associates and/or Appalachian Energy, Inc., and/or Plateau Resource Development Corp.

Defendants Bruce Humbert and Janelle Humbert owned all or part of the stock of, or were the agents, servants, or officers of Lake Plains Energy, Inc., and B.J. Humbert Co.

Defendants Doran, Laughlin, and Rigatti designed an oil and gas drilling and operating scheme whereby they induced investors to enter into contractual agreements either with them or with an entity controlled by them to locate drilling sites and to develop and operate oil and gas wells on behalf of investors. Pursuant to their scheme, they induced plaintiff and Energy Minerals, Inc., by means of fraudulent representations, to invest in a number of oil and gas well drilling programs.

On November 8, 1977, plaintiff and Energy Minerals entered into a series of turnkey drilling agreements with Appalachian Energy, Inc., Doran and Associates, and Plateau Resource Development Corp., whereby the latter agreed to drill, complete, and prepare for operation and production various oil and gas wells. On that same date, the same parties also entered into a series of Operating Agreements, whereby the latter agreed to place the wells into production and to connect them to a pipeline, to sell all the oil and gas produced at the best available price, and to collect and hold in trust any proceeds derived therefrom.

Defendants Doran, Laughlin, and Rigatti disregarded the corporate entities of Doran and Associates Appalachian Energy, Inc., and Plateau Resource Development Corp. and through a pattern of stock ownership and control dominated and controlled the latter and dissipated the latter's funds and assets for their own enrichment and to enrich other businesses under their control.

In furtherance of their scheme to defraud plaintiff, defendants Doran, Laughlin, Rigatti, Ray, Doran and Associates, and Plateau Resources Development Corp. entered into certain agreements concerning the turnkey and operating agreements without plaintiff's knowledge with defendants Lake Plains Energy, Inc., B.J. Humbert Co., Bruce Humbert, and Janelle Humbert.

Pursuant to the turnkey and operating agreements, plaintiff paid defendants in excess of $20,000,000.00 for completion and operation of one hundred and forty-five (145) wells. Defendants failed to complete the wells and diverted or dissipated those funds.

Plaintiff had the right according to the agreements to terminate them in the event of any gross negligence, willful misconduct, any criminal activity on the part of Doran and Associates, Plateau Resource Development Corp., or Appalachian Energy, Inc. Plaintiff terminated all agreements on January 14, 1983. Defendants have refused to turn control of the wells over to plaintiff.

Counts I and II of the Complaint are for breach of the Turnkey and Operating Agreements, respectively. Count III is for conversion. Count IV is for fraudulent misrepresentation. Count V is brought under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.10b–5). Counts VI and VII are brought under Section 12(2) (15 U.S.C. § 77*l* (2)) and Section 17(a) (15 U.S.C. § 77q(a)) of the Securities Act of 1933, respectively. Counts VIII—X are brought under the civil RICO act (18 U.S.C. §§ 1961 *et seq.*). Count XI is for willful, wanton, and/or negligent breach of duties arising under the Turnkey and Operating Agreements. Count XII is for common law civil conspiracy.

## II

### Statutes of Limitation

As has been indicated, plaintiff terminated all of the Turnkey and Operating Agreements on November 14, 1983. On June 24, 1983, approximately six months after it had terminated the agreements, plaintiff filed a voluntary petition for Chapter 11 reorganization in the United States Bankruptcy Court for the Western District

of Texas. On June 21, 1985, approximately two and one-half (2½) years after it had terminated the agreements and just three (3) days less than two (2) years after filing its Chapter 11 petition, plaintiff initiated the present action.

Defendants argue that Counts III—XII are time-barred because the applicable statutes of limitation for each of those Counts had expired by the time plaintiff commenced this action. This contention is without merit. 11 U.S.C. § 108(a) provides in pertinent part that:

> If applicable bankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

The effect of this provision is to extend any relevant statute of limitation for at least an additional two (2) years after the filing of a Chapter 11 petition, provided that it had not already expired by the time that the petition was filed.

Although 11 U.S.C. § 108 makes reference only to "the trustee," it must be read in conjunction with 11 U.S.C. § 1107(a), which provides in relevant part that:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, *a debtor in possession shall have all the rights ... of a trustee* serving in a case under this chapter. (Emphasis added.)

When they are read in conjunction, 11 U.S.C. § 1107(a) grants to a debtor in possession the above rights granted to the trustee under 11 U.S.C. § 108. *See In re Flying S Land & Cattle Co.,* 71 B.R. 183 (Bkrtcy.D.Nev.1987).

Defendants' assertion that each of Counts III—XII is governed by a statute of limitation of two years or less is incorrect. Many of the claims set forth in those counts have a statute of limitation which exceeds two years. For instance, Count IV, which asserts a claim for fraudulent misrepresentation, is governed by a six-year limitation. *See A.J. Cunningham Packing Corp., et al. v. Congress Financial Corp, et al.,* 792 F.2d 330 (3d Cir.1986). Counts VIII through X, which are brought under RICO, are governed by a four-year limitation. *See Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

Assuming arguendo that the applicable statute of limitation for each of the counts in question began to run on January 14, 1983, when plaintiff terminated all of the Turnkey and Operating Agreements, defendants' argument would have to be rejected even if they were correct in asserting that each of these counts is governed by a statute of limitation of two years or less. As has been indicated, plaintiff filed its Chapter 11 petition on June 24, 1983, approximately six months after the claims in Counts III—XII arose. It is undisputed that none of the applicable statutes of limitation for these counts had expired by that date. It therefore follows that the statute of limitation for each of these counts was extended by virtue of 11 U.S.C. §§ 108(a) and 1107(a) for at least an additional two years until June 24, 1985. Plaintiff, however, commenced this action within that time period on June 21, 1985. Consequently, none of the claims set forth in Counts III through XII is time-barred.

### III

*Count VII*

■ The claim asserted in Count VII is brought under Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)).

Defendants assert that Count VII should be dismissed because there is no implied private right of action under Section 17(a).

Those Courts of Appeals which have considered this issue are in disagreement. Four of them have found an implied private right of action. *See Stephenson v. Calpine Conifers II, Ltd,* 652 F.2d 808, 815 (9th Cir.1981); *Lincoln National Bank v. Herber,* 604 F.2d 1038, 1040 n. 2 (7th Cir. 1979); *Kirshner v. U.S.,* 603 F.2d 234, 241

(2d Cir.1978); *cert. denied sub nom. Goldberg v. Kirshner,* 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979); and *Newman v. Prior,* 518 F.2d 97, 99 (4th Cir. 1975). Two of them have not so found. *See Landry v. All–American Assurance Co.,* 688 F.2d 381, 391 (5th Cir.1982); and *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

The United States Court of Appeals for the Third Circuit has not yet addressed this issue.

The majority of the district courts within this Circuit which have addressed this issue, however, have held that there is no implied private right of action under Section 17(a), *see e.g., Mursau Corp v. Florida–Penn Oil & Gas, Inc.,* 638 F.Supp. 259, 261 (W.D.Pa.1986); *Binkley v. Sheaffer,* 609 F.Supp. 601, 602–603 (E.D.Pa.1985); *In re Catanella and E.F. Hutton Co.,* 583 F.Supp. 1388, 1419 (E.D.Pa.1984); *Warner Communications v. Murdoch,* 581 F.Supp. 1482, 1496 (D.Del.1984); and *Kimmel v. Peterson,* 565 F.Supp. 476, 483 (E.D.Pa. 1983).

This court adopts, without reciting the details thereof, the analysis set forth in *Kimmel,* 565 F.Supp. at 482–488, and holds that there is *no* implied private right of action under Section 17(a). Consequently, Count VII will be dismissed.

## IV

*Counts VIII–X and XII*

■ Counts VIII through X allege violations of RICO. Count XII alleges a common law civil conspiracy.

According to the defendants, Counts VIII through X should be dismissed because the allegations contained therein do not include all of the essential elements of RICO violations. They further maintain that Counts VIII through X and XII should be dismissed because they do not plead the circumstances of fraud underlying those counts with particularity. These contentions are without merit.

Fed.R.Civ.P. 8(a) sets the tone of the federal pleading rules. Unlike their predecessors, the Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief."

A motion to dismiss for failure to state a claim upon which relief can be granted should be granted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The question is not whether plaintiff will prevail in the end, but whether plaintiff is entitled to offer evidence in support of its claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court must, when considering such a motion, presume that the factual allegations are true and draw all reasonable inferences in favor of the non-moving party. *See Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

The court has reviewed the allegations of the Complaint and is unable to conclude at this time that plaintiff is not able to prove any facts in support of its claims in Counts VIII through X which would entitle it to relief.

Rule 9(b) articulates a somewhat stricter standard to be applied when pleading fraud. It requires the plaintiff to plead with particularity the "circumstances" of the alleged fraud in order to place defendants on notice of the precise misconduct with which they are charged and to safeguard defendants against spurious charges of immoral and fraudulent conduct. *See Seville Industrial Machinery v. Southmost Machinery,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

Rule 9(b) serves to reinforce the notice function of pleading and is to be construed in light of Rule 8. 2A *Moore's Federal Practice* ¶ 9.03[2], pp. 38–39 (1987). Rule 9(b) must not be read to defeat the simple pleading requirements of Rule 8. *See*

*Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3d Cir.1983).

Precise allegations as to time, date, and place of the alleged fraud, although sufficient, are not necessary under Rule 9(b). A plaintiff is free to use alternative means of injecting the required precision into the allegation of fraud. *See Seville,* 742 F.2d at 791.

The court has reviewed the allegations of fraud made in the Complaint and finds that they are sufficient to place defendants on notice of the misconduct with which they are charged. The motion to dismiss Counts VIII through X and XII for failure to plead the circumstances constituting fraud will be denied.

### V

*Count XI*

Count XI alleges that the defendants "willfully, wantonly, and/or negligently" breached the duty to drill, operate, and supervise the oil and gas wells in a "good and workmanlike manner."

Defendants contend that Count XI should be dismissed because plaintiff has merely attempted to convert its claims for breach of contract in Counts I and II into a tort claim merely alleging that defendants "willfully, wantonly, and/or negligently" breached duties arising out of the Turnkey and Operating Agreements.

■ In general, Pennsylvania courts have been reluctant to permit tort recovery for contractual breaches. *See,* e.g., *Glazer v. Chandler,* 414 Pa. 304, 308–309, 200 A.2d 416, 418 (1964). This reluctance is not, however, iron-clad. Failure to perform a duty imposed by contract *may,* in limited circumstances, constitute a tort. *See Brown v. Moore,* 247 F.2d 711, 716 n. 6 (3d Cir.), *cert. denied,* 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957). A tort claim may be maintained only when "the wrong ascribed to defendant ... [is] the gist of the action, the contract being collateral." *Closed Circuit Corp. of America v. Jerrold Electronics,* 426 F.Supp. 361, 364 (E.D.Pa.1977) (citing 1 C.J.S. Actions § 46).

■ Careful reading of the Complaint indicates that plaintiff is claiming nothing more in Count XI than that defendants failed to discharge duties arising under the Turnkey and Operating Agreements. The contract is not "collateral" to the injury. The injury for which plaintiff seeks redress is recoverable in an action on the contracts. The court does not believe that Pennsylvania would superimpose tort law on those contracts in the situation presented in this case. Consequently, Count XI will be dismissed for failure to state a claim upon which relief can be granted.

### VI

*Failure To Join An Indispensable Party*

■ Defendants maintain that the entire Complaint should be dismissed pursuant to Fed.R.Civ.P. 19 because plaintiff has failed to join as an indispensable party Appalachian Energy, Inc., with whom many of the Turnkey and Operating Agreements were made.

Fed.R.Civ.P. 19 comprises two subdivisions and contemplates a two-step analysis. First, it must be determined in accordance with subdivision (a) whether the absent person is to be joined—i.e., whether they are "necessary"—, if feasible. If the absentee should be joined but joinder is not feasible, it then must be determined in accordance with subdivision (b) whether the absentee is "indispensable"—i.e., whether "in equity and good conscience" the action should proceed in that person's absence. *See* 3A Moore's Federal Practice ¶ 19.07–2[0], pp. 128–129 (1987). If the absentee is not "necessary" under subdivision (a), the determinations set forth in subdivision (b) need not be reached. *See Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1042 (9th Cir), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983).

Fed.R.Civ.P. 19(a) provides in pertinent part that:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the

person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .

Clauses (1) and (2) of subdivision (a) set forth conditions which must be met in order for an absent party to be necessary. 3A Moore's Federal Practice ¶ 19.03, pp. 45–46 (1987). The conditions are disjunctive. 3A Moore's Federal Practice ¶ 19.07[0], p. 91 (1987).

Plaintiff seeks, among other things, rescission of the Turnkey and Operating Agreements. According to defendants, Appalachian is a necessary party because: (1) complete relief—including rescission—cannot be granted to plaintiff without Appalachian's joinder; and (2) Appalachian, since it is a party to the agreements which plaintiff seeks to have rescinded, will be unable to protect its own interest in the agreements unless it is joined.

These contentions are without merit. Appalachian is not a necessary party to this action.

■ Even assuming that the agreements to which Appalachian was a party cannot be rescinded by this court in its absence, it does not follow that "complete relief" cannot be awarded to plaintiff in the event that it prevails. Joinder is not mandated under Rule 19(a)(1) where, even though *certain* types of relief are unavailable due to a party's absence, *other meaningful* relief can be provided. *See* 3A Moore's Federal Practice ¶ 19.07 [2.–0], pp. 97–98 (1987). In addition to seeking rescission of the agreements, plaintiff in this case also seeks compensatory and punitive damages. Assuming that plaintiff ultimately prevails in this case, "meaningful" relief in the form of monetary damages could be rendered.

Neither is joinder required under Rule 19(a)(2)(i). Appalachian's absence will not, as a practical matter, impair its ability to protect any interest of its own relating to the subject of this action. It is not clear that Appalachian would be adversely affected by the rescission of the agreements. Even assuming that it would be, its interest in the agreements nonetheless will be adequately represented even in its absence.

■ The fact that an absent party may be bound by a judgment entered in its absence does not require its joinder, as long as its interests are adequately represented by parties who are present. *See* 3A Moore's Federal Practice ¶ 19.07 [2.–1], p. 106 (1987). Appalachian was not the only party to the agreements with plaintiff which plaintiff seeks to rescind. Defendants Doran and Associates and Plateau Resource Development Corp. were also parties to those agreements. It is reasonable to infer that Doran and Associates and Plateau, both of whom are parties, will adequately represent Appalachian's interest by opposing rescission.

Since Appalachian is not a necessary party under Rule 19(a), it follows *a fortiori* that it is not indispensable under Rule 19(b) and that the matter of dismissal need not be addressed. *See* 3A Moore's Federal Practice ¶ 19.07–2[0] p. 128 (1987). Defendants' motion to dismiss for failure to join an indispensable party therefore must be denied.

## VII

*More Definite Statement*

Defendants assert that, in the event their motions to dismiss are denied, plaintiff at least should be required to provide a more definite statement of the various claims in the Complaint. In particular, they claim that plaintiff should be required to comply with the requirement of Fed.R.Civ.P. 9(b) that the circumstances constituting the alleged fraud be stated with particularity.

The motion for a more definite statement will be denied.

Fed.R.Civ.P. 12(e) provides in relevant part that:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired....

The basis for granting such a motion is unintelligibility, not lack of detail. *See Towers Tenant Ass'n v. Towers Ltd. Partnership*, 563 F.Supp. 566, 569 (D.D.C.1983). As long as the defendant is able to respond, even if only with a "simple denial, in good faith and without prejudice," the Complaint is deemed sufficient for purposes of Rule 12(e). *See* 5 Wright & Miller, Federal Practice and Procedure § 1376 (1979).

As has been indicated, defendants have interposed the Rule 9(b) particularity requirement with the motion for a more definite statement. If the pleading satisfies the requirements of Rule 8 and fairly notifies the defendants of the nature of the claims against them, the motion should be denied. Even in cases where fraud is alleged, all that is required is a concise statement of the circumstances constituting the alleged fraud. *See* 2A Moore's Federal Practice ¶ 12.18 [1], pp. 130–139 (1987).

It already has been determined that the allegations of fraud in the Complaint are in compliance with Rule 9(b). *See* Section IV, *supra.* The allegations in the Complaint provide the defendants with fair notice of the nature of the claims against them and are precise enough that defendants can reasonably be expected to frame an answer.

## VIII

*Insufficient Service of Process*

A copy of the Complaint and a Summons were hand delivered on behalf of defendant Donald Laughlin to Benjamin Short at 200 Roessler Road, Pittsburgh, Pennsylvania.

Defendant Laughlin contends that the Complaint against him should be dismissed because of insufficient service of process.

Service upon an individual is sufficient if it is made in a manner prescribed by the law of the state in which the district court sits. Fed.R.Civ.P. 4(c)(2)(1). Under Pennsylvania law, service may be made upon an individual by hand delivering a copy of the Complaint at any office or usual place of business of the defendant to either his agent or to the person in charge thereof at that time. Pa.R.Civ.P. 1009(b)(2)(iii).

Service in this instance was not made in compliance with Rule 1009(b)(2)(iii). Plaintiff has failed to establish that service was made at Laughlin's usual place of business and that it was made upon either his agent or upon the person in charge of the office at the time service was attempted.

Plaintiff argues that if service was defective it should be granted leave pursuant to Fed.R.Civ.P. 4(h) to make amended service upon Laughlin. Fed.R.Civ.P. 4(h) provides that:

At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

Plaintiff's request must be denied. Rule 4(h), by its terms, permits amendment only of "process or service thereof." It does *not* address the problem of *defective* service of process. It concerns only paper and looks only to the fact of the process and of the proof of service. *See Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 167 (3d Cir.1976). The most common application of Rule 4(h) is where plaintiff has made a simple mistake or a technical error that results in a failure to identify a defendant properly. It applies only when the error goes to form rather than to substance and the proper defendant has received process, realizes that it is directed to him, and is put on notice of the action. *See Witherow*, 530 F.2d at 167 (citing 4 Wright

& Miller, *Federal Practice and Procedure* ¶ 1131, pp. 547–548 (1969)).

Rule 4(h) is inappropriate in this case. The paper itself that was served was not defective. Rather, the service was defective in that it was never served upon Laughlin.

## IX

*Lack Of Personal Jurisdiction*

■ Defendant Ray, who is a resident of Kentucky and President of defendant Plateau Resource Development Corp., maintains that the Complaint against him should be dismissed for want of personal jurisdiction because "minimum contacts" with the forum state are lacking. This contention is without merit. Plaintiff has come forward with evidence to justify the exercise of personal jurisdiction over defendant Ray pursuant to 42 Pa.C.S.A. § 5322(a)(3).

A two-step analysis must be made when determining whether personal jurisdiction may be asserted over a nonresident defendant on some basis other than consent, general presence, or agency. *See Reliance Steel Products v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir.1982). If the claim arises out of forum-related activity by the defendant, the court must determine whether those contacts are such as to justify asserting jurisdiction over the nonresident defendant. *See Reliance Steel*, 675 F.2d at 588. In order for the court to exercise personal jurisdiction in such contexts, there must be evidence that the defendant "purposefully availed itself of the privilege of conducting activities within the forum state." *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A *single* forum-related contact *may* be sufficient to create personal jurisdiction, provided that the claim arises out of that contact. *See Compagnie des Bauxites deGuinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983).

If the claim arises from non-forum activity by the defendant, plaintiff must come forward with evidence that, in other respects, the defendant has maintained "continuous and substantial" affiliations with the forum. *See Reliance Steel*, 675 F.2d at 588–589. Defendants' contacts with the forum must be qualitatively and quantitatively greater than where the claim arises out of forum-related activities. *See Compagnie des Bauxites*, 723 F.2d at 362.

The Complaint does not indicate whether the claims against defendant Ray arise out of forum-related or nonforum-related activity on his part. Plaintiff has, however, produced other evidence that claims against Ray arise out of forum-related activity on his part. Ray has stated in Answers to Interrogatories served on him by plaintiff that he travelled to Pennsylvania on the business of Plateau Resource Development Corp. on several occasions. At least two of those trips to Pennsylvania involved conduct directly related to this litigation. One of those trips was to Pittsburgh to confer with defendant Weldon Doran (and perhaps others) to finalize the operating agreement for five of the wells drilled by Plateau Resource Development Corp. for plaintiff. The other trip, which took place on March 25, 1981, was to Pittsburgh to meet with defendants Doran, Laughlin and Rigatti to discuss several of the drilling projects in which Doran and Associates had an interest.

It is reasonable to infer from these contacts that defendant Ray purposefully availed himself of the privilege of conducting activities in Pennsylvania and that he could expect to be haled into court in Pennsylvania. Jurisdiction can be asserted over defendant Ray pursuant to 42 Pa.C.S.A. § 5322(a)(3).

Defendants have raised other grounds in support of their motions to dismiss. They have been considered by the court and are found to be without merit.

An appropriate order will be issued.

## ORDER

AND NOW, March 1st, 1989, for reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED, that counts VII and XI of the Complaint are dismissed. It is further

ORDERED, that the Complaint against defendant Donald R. Laughlin is dismissed. It is further

ORDERED, that all other motions by defendants are denied, and defendants shall file Answers to the Complaint within twenty (20) days of this Order.