Joseph G. HARRIS, Richard McBay, and Paul Parker, Plaintiffs,

v.

Dan MALOUGHNEY, Superintendent, S.R.F.C.; James Gamble, Administrator, Department of Corrections; Dusty Miller, Security Manager, S.R.F.C.; Rick Krantz, Correctional Officer, Supervisor, Defendants.

Cause No. CV 92–133–M–LBE.

United States District Court, D. Montana, Missoula Division.

June 25, 1993.

Stephen C. Berg, Warden, Christiansen, Johnson & Berg, Kalispell, MT, for plaintiffs.

James B. Obie and David L. Ohler, Dept. of Corrections & Human Services, Helena, MT, for defendants.

## ORDER

ERICKSON, United States Magistrate Judge.

On December 17, 1992, District Judge Charles C. Lovell issued an Order, pursuant to consent of the parties, referring the above captioned case to the undersigned Magistrate Judge for all further proceedings, including entry of final judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73.

This matter comes before the Court on Defendants' combined Motion to Dismiss and Motion for a More Definite Statement. The parties briefed the Motions and the Court being informed now enters the following:

## ORDER

1. Defendants' Motion to Dismiss is **GRANTED, WITHOUT PREJUDICE TO AMENDMENT,** as to Claims 5 and 6 of the Complaint.

2. Defendants' Motion to Dismiss is **GRANTED** as to:

 a. Defendant Maloughney on Claim 7;

 b. Defendant Gamble on Claims 1, 2, 4 and 7;

 c. Defendant Miller on Claims 2 and 3;

 d. Defendant Krantz on Claims 1, 2, 3 and 4,

and is otherwise **DENIED.**

3. Defendants' Motion for a More Definite Statement is **DENIED.**

## RATIONALE

### I. INTRODUCTION

In the context of a motion to dismiss under F.R.Civ.P. Rule 12(b)(6) the court accepts all allegations of fact as true and construes them in a light most favorable to the plaintiff. Dismissal should not be granted unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Durning v. First Boston Corp.,* 815 F.2d 1265 at 1267 (9th Cir.1987). "A complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff relies on a different legal theory." *Haddock v. Board of Dental Examiners of California,* 777 F.2d 462 at 464 (9th Cir.1985).

Plaintiffs filed their Complaint pro se, and although they now have counsel, their pleading has not been amended. Federal courts must construe a pro se inmate's pleadings liberally and hold them "to less stringent standards than formal pleadings drafted by lawyers...." *Hughes v. Rowe,* 449 U.S. 5 at 9, 101 S.Ct. 173 at 176, 66 L.Ed.2d 163 at 169 (1980); *Estelle v. Gamble,* 429 U.S. 97 at 106, 97 S.Ct. 285 at 292, 50 L.Ed.2d 251 (1976). Under the law of the Ninth Circuit, a pro se litigant must be given an opportunity to amend his complaint, and the court must provide the litigant with notice of the complaint's deficiencies. *Noll v. Carlson et al.,* 809 F.2d 1446 at 1449 (9th Cir.1987); *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621 at 623–24 (9th Cir.1988).

### II. BACKGROUND FACTS; PLAINTIFFS' ALLEGATIONS

Plaintiffs are incarcerated at the Swan River Forest Camp (S.R.F.C.), a state correctional facility for young male convicts. Plaintiffs allege seven separate incidents as grounds for relief in their Complaint. The allegations are summarized as follows:

1. **Excessive Discipline.** On October 25, 1992, Defendants found a string tied across a dorm which was perceived to be intended to trip a staff member. As of the date of the pleading, November 11, 1992, no inmate had come forward and admitted responsibility and it is doubted anyone would. Defendants have instituted a "progressive discipline" program to punish all of the inmates until the responsible inmate or inmates come forward. As a result, the staff has placed restrictions on privileges with regard to VCR movies, and has scheduled future restrictions on breakfast, bedtime, television room, telephone, mail and visiting privileges. These restrictions will cause additional aggressive incidents to occur at the camp.

2. **Mail Confidentiality.** Defendants have opened Plaintiffs' legal mail from the court and their legal counsel, thereby violating confidentiality. Defendant Maloughney informed Harris that, "I can't give you a guarantee that this will not happen again."

Plaintiffs state that there is factual support for this claim.

3. **Access to Court and a Law Library.** Defendants have denied Plaintiffs access to a law library. Defendants have told Plaintiffs that there is no funding or adequate space for a library. The inmates only have access to the 1989 Montana Code Annotated. Therefore, Plaintiffs do not have proper access to the courts.

4. **Phone Monitoring.** Defendants have denied Plaintiffs use of a private telephone line. Security personnel monitor phone calls and there is a sign over every phone that states, "Phone calls will be monitored." This violates Plaintiffs' right to confidential consultation with counsel, and they are afraid to talk to their attorneys. Plaintiffs have sent complaints to Defendant Miller but he has not changed the situation.

5. **Medical Care.** Defendants have not provided Plaintiffs with proper medical care. Plaintiff Parker received a one-inch cut and the medical staff provided only a piece of tape to cover the wound. Plaintiff Parker has a permanent scar due to the medical care provided. The camp resident handbook states that Defendants will provide medical treatment at either Bigfork or Kalispell, yet Defendants send some inmates to the Montana State Prison for treatment, where they are housed for two to six weeks, while others with similar medical conditions are taken to Bigfork or Kalispell and return the same day. Plaintiffs believe this is discriminatory and is done to discourage them from seeking medical treatment.

6. **Overcrowding.** The S.R.F.C. is overcrowded. Plaintiffs allege that the facility is designed for 30 inmates and it currently holds 50 or 60 inmates. This causes stress and affects inmates' attitudes. The "warehousing" is detrimental to Plaintiffs' rehabilitation.

7. **Retaliatory Punishment.** Plaintiff McBay was involved in an altercation with Defendant Krantz whereby Krantz violently pushed McBay into a wall and injured his shoulder. McBay has not received any response to a grievance he filed after the altercation. Defendants have threatened McBay

and he has received unwarranted "write-ups." Defendant Miller has deemed McBay a "security risk" even though McBay has served in minimum security for almost a full year. Plaintiffs allege that this treatment is unnecessary and unwarranted since McBay has already received his punishment for the altercation.

## III. APPLICABLE LAW

Defendants contend their actions are entitled to qualified immunity, and the supervisory Defendants cannot be held liable simply in their capacity as supervisors or state officials.

### III(A). LIABILITY OF SUPERVISORY PERSONNEL

Supervisory personnel cannot be held liable in a § 1983 action based only on their capacity as supervisors. *Bonner v. Lewis,* 857 F.2d 559 at 565 (9th Cir.1988). A plaintiff must also show that the named Defendants either personally participated in the alleged deprivation or caused such a deprivation to occur, *Harris v. City of Roseburg,* 664 F.2d 1121 at 1125 (9th Cir.1981), or that the named Defendants, as supervisors, failed to properly train personnel and this failure to train resulted in the alleged deprivation, *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675 at 680 (9th Cir.1984).

In *Larez v. City of Los Angeles,* 946 F.2d 630 at 646 (9th Cir.1991), it was held that individual liability can be imposed against a supervisor under § 1983 for his own action or inaction in the training, supervision, or control of subordinates, for acquiescence in the constitutional deprivations complained of, or for conduct showing a reckless or callous indifference to the rights of others. Where a supervisor sets in motion a series of acts by others, or knowingly refuses to terminate such acts, liability will lie. *Id.*

### III(B). QUALIFIED IMMUNITY

Defendants assert that they have qualified immunity to civil liability and that this bars Plaintiffs' Complaint. This doctrine is not merely a defense to civil liability, but provides immunity from suit. *Hunter v.*

*Bryant*, 502 U.S. —— at ——, 112 S.Ct. 534 at 536, 116 L.Ed.2d 589 at 595 (1991) (per curiam). In *Harlow v. Fitzgerald*, 457 U.S. 800 at 818, 102 S.Ct. 2727 at 2738, 73 L.Ed.2d 396 at 410 (1982), the Court stated:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.*, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 396.

 The rights in question must be clearly established in a particularized sense, so that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635 at 640, 107 S.Ct. 3034 at 3039, 97 L.Ed.2d 523 (1987). The unlawfulness of the an act "must be apparent in light of pre-existing law." *Malley v. Briggs*, 475 U.S. 335 at 344–45, 106 S.Ct. 1092 at 1097–98, 89 L.Ed.2d 271 (1986). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.*, 475 U.S. at 341, 106 S.Ct. at 1096; *Hunter v. Bryant*, supra, 502 U.S. —— at ——, 112 S.Ct. 534 at 537, 116 L.Ed.2d 589 at 596.

In *Harlow*, supra, the Court stated that the issue of qualified immunity is appropriately resolved on summary judgment. *Harlow v. Fitzgerald*, supra, 457 U.S. at 818, 102 S.Ct. at 2738. Although the question of immunity is one of law for the courts, *Hunter v. Bryant*, supra, 502 U.S. at ——, 112 S.Ct. at 537, 116 L.Ed.2d at 596, resolution of the issue requires a specific factual inquiry by the Court that is not easily amenable to resolution in the context of a motion to dismiss. The claims raised in this pleading that survive dismissal appear to this Court to involve alleged violations of established constitutional rights sufficient to rebut an assertion of the defense of immunity at this stage of the proceedings.

## IV. DISCUSSION

 Prison officials have broad administrative and discretionary authority to act according to institutional needs and objectives.

*Hewitt v. Helms*, 459 U.S. 460 at 467, 103 S.Ct. 864 at 869, 74 L.Ed.2d 675 (1983). Federal courts must tread warily in reviewing matters involving internal prison administration. *Bell v. Wolfish*, 441 U.S. 520 at 527, 99 S.Ct. 1861 at 1868, 60 L.Ed.2d 447 (1979).

However, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "[A] policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims." *Procunier v. Martinez*, 416 U.S. 396 at 405, 94 S.Ct. 1800 at 1807, 40 L.Ed.2d 224 (1974).

Each claim for relief in the Complaint is addressed separately as follows:

 1. **Progressive/Excessive Discipline.** Plaintiffs' allegation of "progressive discipline" is sufficient at this stage to survive dismissal. Defendants argue that there is no protected liberty interest to a VCR and, accordingly, Plaintiffs' allegations of the reduction of this and threatened reduction of other privileges fail to state a constitutional claim. The Court agrees that there is no fundamental interest grounded in the federal Constitution to VCR movies. However, disciplinary action is being taken against Plaintiffs with the consequence of a reduction in privileges normally afforded to inmates.

 A state may, through enactment of statutory or regulatory measures, create a protected liberty interest in certain areas pertaining to an inmate's confinement. *Board of Pardons v. Allen*, 482 U.S. 369 at 373, 107 S.Ct. 2415 at 2418, 96 L.Ed.2d 303 (1987); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 at 7, 99 S.Ct. 2100 at 2103, 60 L.Ed.2d 668 (1979). The Supreme Court has held that liberty interests can be created by statutory or regulatory measures which set particularized standards or criteria to guide decisionmakers. *Hewitt*, supra, 459 U.S. at 469–472, 103 S.Ct. at 870–872, 74 L.Ed.2d at 686–688; *Olim v. Wakinekona*, 461 U.S. 238 at 249, 103 S.Ct. 1741 at 1747, 75 L.Ed.2d 813 (1983). Where a state does,

in fact, create a protected liberty interest in a particular aspect of incarceration, it may not deprive an inmate of that interest without due process of law. *Hewitt,* supra, 459 U.S. at 472, 103 S.Ct. at 872, 74 L.Ed.2d at 688. Due process "affords a prisoner certain minimum procedural safeguards before disciplinary action may be taken against him." *Hughes v. Rowe,* 449 U.S. 5 at 9, 10, 101 S.Ct. 173 at 175, 176, 66 L.Ed.2d 163 at 169, 170 (1980).

Strict due process standards do not apply to all prison disciplinary proceedings, but less restrictive procedural protections set out in *Hewitt v. Helms,* supra, do apply to most prison punishment. *Id.,* 459 U.S. at 473, 476, 103 S.Ct. at 872, 873, 74 L.Ed.2d at 689, 691 (informal, nonadversarial evidentiary review process). Such minimal protections require that a prisoner receive "some notice of the charges against him and an opportunity to present his views to the prison official[s] ..." *Hewitt,* 459 U.S. at 476, 103 S.Ct. at 874.

In *Superintendent v. Hill,* the Supreme Court held that disciplinary decisions which result in the loss of a protected liberty interest must be supported by some modicum of evidence. 472 U.S. 445 at 454, 456, 105 S.Ct. 2768 at 2773, 2774, 86 L.Ed.2d 356 at 364, 365 (1985). Regulations or practices used by correctional officials must bear a rational relationship to articulated and legitimate penological interests. *Turner v. Safley,* 482 U.S. 78 at 89, 107 S.Ct. 2254 at 2261, 96 L.Ed.2d 64 at 79 (1987); *Walker v. Sumner,* 917 F.2d 382, 386 (9th Cir.1990); *Swift v. Lewis,* 901 F.2d 730 at 732 (9th Cir.1990).

The Constitution protects individuals from arbitrary governmental action, and from discipline which is in the form of punishment or retaliation, where legitimate governmental interests are lacking. For example, disciplinary actions that are in the form of punishment, beyond an inmate's judgment and sentence of incarceration, and which are imposed for an improper purpose unrelated to administrative needs or maintaining order, implicate the Eighth Amendment. See, e.g., *Dearman v. Woodson,* 429 F.2d 1288 at 1290 (10th Cir.1970) (question is whether treatment of prisoners was "clear abuse or caprice"); *Morgan v. LaVallee,* 526 F.2d 221 at 225 (2d Cir.1975) (federal question raised where correctional practices involve use of punishment without procedural due process); *Johnson v. Williams,* 788 F.2d 1319 at 1325 (8th Cir.1986) (whether action was for punishment or control).

In this case, Defendants' alleged actions could be construed as violating the principles established in *Hewitt, Superintendent,* and *Turner,* supra. The Court is unaware of what type of regulations or policies govern discipline or privileges at S.R.F.C. It cannot be stated at this stage of the proceedings that these policies do not create liberty interests in disciplinary procedures or privileges normally afforded to all inmates that are worthy of minimal due process protection. It is questionable whether the alleged blanket and progressive discipline against all inmates, regardless of whether they were suspected of involvement in the incident, would pass constitutional muster under due process standards.

Plaintiffs allege that there is no evidence that all inmates were involved in the incident which led to the progressive restrictions against all inmates. Accepting the allegations as true for the purposes of this Motion, the allegations on this issue are sufficient to state a claim upon which relief could be granted.

In light of the applicable legal authorities which support Plaintiffs' claim, Defendants are not entitled to claim qualified immunity on this issue at this stage of the proceedings. However, the allegations on this issue only describe involvement by Defendants Maloughney and Miller; there are no allegations involving Defendants Krantz or Gamble. Accordingly, Defendants' Motion to Dismiss is granted as to these two Defendants on this claim.

**2. Mail Confidentiality.** Plaintiffs' claim that Defendants are violating the confidentiality of their legal mail is not subject to dismissal. Prisoners have a liberty interest in uncensored communication by letter and, as such, it is protected from arbitrary governmental invasion. *Procunier,* 416

U.S. at 418, 94 S.Ct. at 1814, 40 L.Ed.2d at 243. Prisoners also have, as a basic corollary to the constitutional guarantee of due process and access to courts, a right to communicate with an attorney in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. *Procunier*, 416 U.S. at 419, 94 S.Ct. at 1814, 40 L.Ed.2d at 243.

In light of the Sixth Amendment's guarantee of right to effective counsel, confidentiality of communications between client and attorney must also be considered within the scope of constitutional protection. Prison officials' practices which obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid absent legitimate penological interests. *Procunier*, 416 U.S. at 419, 94 S.Ct. at 1814, 40 L.Ed.2d at 243; *Casey v. Lewis*, 773 F.Supp. 1365 at 1367–1368 (D.Ariz.1991) (citing *Turner v. Safley* and *Walker v. Sumner*, supra).

■■■■ The United States Supreme Court has held that prison officials may open a prisoner's privileged mail, even that from attorneys, as long as the prisoner is present and the mail is not read. *Wolff v. McDonnell*, 418 U.S. 539 at 577, 94 S.Ct. 2963 at 2985, 41 L.Ed.2d 935 at 963 (1974). In this case, Plaintiffs allege that Defendants are opening mail from Plaintiffs' attorneys. Construing Plaintiffs' pro se allegations liberally, it cannot be said Plaintiffs could not prove any set of facts that would entitle them to relief on this claim.

In light of the applicable legal authorities which support Plaintiffs' claim, Defendants are not entitled to claim qualified immunity on this issue at this stage of the proceedings. However, the allegations on this issue only describe involvement by Defendant Maloughney; there are no allegations involving Defendants Miller, Krantz or Gamble. Accordingly, Defendants' Motion to Dismiss is granted as to these three Defendants on this claim.

**3. Access to Court and a Law Library.**
Plaintiffs' allegation that Defendants have denied Plaintiffs access to a law library and the courts is not subject to dismissal. The Supreme Court has held that the fundamental constitutional right of access to the courts requires that prison officials provide "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817 at 828, 97 S.Ct. at 1491, 1498, 52 L.Ed.2d 72 at 83 (1977); see, also, *Toussaint v. McCarthy*, 918 F.2d 752 at 760 (9th Cir.1990); *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851 at 855 (9th Cir.1985).

■■■■ Defendants assert that Plaintiffs must specifically claim an actual injury arising from a denial of access to a legal library. However, when the claim involves a "core" *Bounds* requirement such as is alleged here, actual injury need not be shown. *Sands v. Lewis*, 886 F.2d 1166 at 1171 (9th Cir.1989).

■■■■ There are no set minimum requirements for affording indigent prisoners adequate access to the courts and the reviewing court must focus on whether the individual plaintiff before it has been denied meaningful access. *King v. Atiyeh*, 814 F.2d 565 at 568 (9th Cir.1987). The state has the burden to provide meaningful access and to demonstrate that its chosen method is adequate. *Gluth v. Kangas*, 951 F.2d 1504 at 1508 (9th Cir.1991) (citing *Storseth v. Spellman*, 654 F.2d 1349 at 1352 (9th Cir.1981)).

■■■■ In this case, Plaintiffs allege that no law library exists at S.R.F.C., that the only legal materials available are an out-of-date set of the Montana Code Annotated, and the Montana Defender Project will only assist them with sentence review matters. This is sufficient to distinguish the authority of *Wild v. McCormick*, CV–91–167–GF (D.Mont.1991) relied on by Defendants, where the question was whether the access afforded to an existing law library or persons trained in the law was adequate. Plaintiffs' allegations are sufficient to allege a violation of the mandate in *Bounds* to either provide an adequate law library or, in the alternative, adequate assistance from persons trained in the law. *Toussaint*, supra, 918 F.2d at 760.

In light of these controlling precedents Defendants are not entitled to claim qualified immunity on this issue at this stage of the proceedings. However, the allegations on

this issue only describe involvement by Defendants Maloughney and Gamble; there are no allegations involving Defendants Miller or Krantz. Accordingly, Defendants' Motion to Dismiss is granted as to these two Defendants on this claim.

4. **Phone Monitoring.** Plaintiffs' allegation that Defendants' monitoring of phone calls affects their confidential communications with attorneys is not subject to dismissal. Generally, it is reasonable for authorities charged with maintaining the security of the penal facility to monitor inmates' phone calls. *U.S. v. Noriega*, 917 F.2d 1543 at 1551 (11th Cir.1990) (citing *Feeley v. Sampson*, 570 F.2d 364 at 373–4 (1st Cir. 1978)). However, a basic corollary to the right of access to the courts is an inmate's right to communicate with an attorney. *Procunier*, supra, 416 U.S. at 419, 94 S.Ct. at 1814, 40 L.Ed.2d at 243. Institutional practices which obstruct the aspects of the right of access to the courts, absent valid penological justifications, are invalid. *Procunier*, supra, 416 U.S. at 419, 94 S.Ct. at 1814, 40 L.Ed.2d at 243; *Casey v. Lewis*, 773 F.Supp. 1365 at 1367–1368 (D.Ariz.1991) (citing *Turner v. Safley* and *Walker v. Sumner*, supra).

In this case, Plaintiffs allege that confidential communication with their attorneys is precluded by the monitoring and this practice has a chilling effect on their communications. Defendants argue that Plaintiffs have not alleged actual injury to support a claim upon which relief can be granted because Plaintiffs merely allege that they fear possible monitoring. However, in Plaintiffs' Statement of Claim at paragraph 4, it is alleged that, "[o]ur right to confidential consulation [sic] with our attorneys is being violated." Accepting this allegation as true and viewing the Complaint in the light most favorable to Plaintiffs, the complaint is sufficient to state a claim upon which relief can be granted.

In light of the applicable case law, it cannot be said at this stage of the proceedings that Defendants are entitled to claim qualified immunity on this issue as a matter of law. However, the allegations on this issue only describe involvement by Defendant Miller; there are no allegations involving Defen-

dants Maloughney, Gamble or Krantz. Accordingly, Defendants' Motion to Dismiss is granted as to these three Defendants on this claim.

5. **Medical Care.** Plaintiffs' allegations regarding medical care is not sufficient as pled and is subject to dismissal. This claim contains two issues, an alleged failure to provide adequate medical care, and allegedly discriminatory provision of medical services.

In viewing the substantive allegations on both of these issues in light of applicable legal authority, it appears Plaintiffs have stated a claim sufficient to survive a motion to dismiss. As to the inadequate medical care issue, see, *Estelle v. Gamble*, 429 U.S. 97 at 102–6, 97 S.Ct. 285 at 290–92, 50 L.Ed.2d 251 (1976); *Wilson v. Seiter*, 501 U.S. —— at ——, 111 S.Ct. 2321 at 2323, 115 L.Ed.2d 271 at 278 (1991); *Hudson v. McMillian*, 503 U.S. —— at ——, 112 S.Ct. 995 at 999, 117 L.Ed.2d 156 at 166 (1992); *Ortiz v. City of Imperial*, 884 F.2d 1312 at 1314 (9th Cir. 1989); *Wood v. Sunn*, 865 F.2d 982, 989 (9th Cir.1988); *Hunt v. Dental Dept.*, 865 F.2d 198 at 200 (9th Cir.1989). As to the discriminatory services issue, see, *Turner v. Safley*, 482 U.S. 78 at 89, 107 S.Ct. 2254 at 2261, 96 L.Ed.2d 64 at 79 (1987) (Regulations or practices used by correctional officials must bear a minimal rational relationship to articulated and legitimate penological interests); see, also, *Walker v. Sumner*, 917 F.2d 382 at 385–386 (9th Cir.1990); *Swift v. Lewis*, 901 F.2d 730 at 732 (9th Cir.1990).

However, on the inadequate medical care issue, the only individual actor named in the pleadings is not a named party defendant. On the discriminatory services issue, no individuals are identified. The Court might surmise who could be properly named as defendants relative to these issues, but the better course is dismissal of the claim without prejudice to amendment to properly identify individual actors or officials. Although the Complaint was prepared and filed pro se, Plaintiffs now have counsel. Accordingly, the Court is not required to offer specific guidance to Plaintiffs regarding amendment. It is not necessary to address the question of

qualified immunity on this issue absent amendment of the claim.

██ 6. **Overcrowding.** Plaintiffs' allegation regarding overcrowding is not sufficient as pled to survive a motion to dismiss. Generally an allegation of overcrowding, without more, does not state a claim under the Eighth Amendment as a violation of an inmate's right to be free from cruel and unusual punishment. *Akoa v. Shimoda*, 832 F.2d 119 at 120 (9th Cir.1987) (citing *Hoptowit v. Ray*, 682 F.2d 1237 at 1249 (9th Cir.1982)); *Rhodes v. Chapman*, 452 U.S. 337 at 348, 101 S.Ct. 2392 at 2400, 69 L.Ed.2d 59 at 70 (1984).

██ However, the Ninth Circuit Court of Appeals has affirmed a determination that overcrowding violates the Eighth Amendment when it "engenders violence, tension, and psychiatric problems." *Toussaint v. Yockey*, 722 F.2d 1490 at 1492 (9th Cir.1984); see, *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461 at 471–72 (9th Cir.1989). Allegations that overcrowding causes "an increase in stress, tension, communicable diseases, and a high increase in confrontations between inmates" are sufficient to state a cause of action if individual injury is claimed. In *Akoa*, supra, it was held that the trial court erred in dismissing such pro se allegations without opportunity for amendment to provide more detail as to individual impact on the named plaintiff. The Court stated it was not "beyond doubt" that the prisoner could prove no set of facts in support of his claim which would entitle him to relief. *Akoa*, supra, 832 F.2d at 120.

██ In this case, Plaintiffs have alleged that the overcrowding is causing stress and affecting inmates' attitudes. As in *Akoa*, this allegation lacks the necessary specificity that these Plaintiffs have personally suffered from the overcrowding. However, it does not appear beyond doubt that Plaintiffs could prove no set of facts in support of their claim. Accordingly, this claim is dismissed without prejudice to amendment. It is not necessary to address the question of qualified immunity on this issue absent amendment of the claim.

██ 7. **Retaliatory Punishment.** Plaintiffs' allegation of retaliatory punishment is not subject to dismissal. As discussed previously relative to the first claim for progressive discipline, although the federal courts tread warily in the area of internal prison administration, the Constitution protects incarcerated persons from arbitrary governmental action and prohibits punishment for improper purposes that lacks rational or legitimate penological justification. See discussion in Section IV(1), supra.

Plaintiffs allege that following Plaintiff McBay's filing of a grievance over the altercation with Defendant Krantz he has been retaliated against, i.e., threatened, subjected to unwarranted write-ups, and classed as a security risk despite a clean behavior record. These allegations, taken as true for the purposes of this Motion, are sufficient to state a cause of action upon which relief could be granted. In light of the legal standards previously articulated in Section IV(1), Defendants are not entitled to claim qualified immunity on this issue at this stage of the proceedings. However, the allegations on this issue only describe involvement by Defendants Krantz and Miller; there are no allegations involving Defendants Maloughney or Gamble. Accordingly, Defendants' Motion to Dismiss is granted as to these two Defendants on this claim.

In seeking dismissal of this claim, Defendants focus on the issue of excessive force in the altercation between Plaintiff McBay and Defendant Krantz. It does not appear to this Court from a fair reading of this allegation that Plaintiffs assert Plaintiff McBay's constitutional rights were violated during the altercation. Instead, they contend that Defendants retaliated against McBay after the he had already been punished for the incident.

However, to the extent Plaintiffs' allegations could be read as complaining of the injuries Plaintiff McBay received during the incident, the Court acknowledges the applicability of Defendants' authority regarding claims of excessive force set out in *Whitley v. Albers*, 475 U.S. 312 at 320, 106 S.Ct. 1078 at 1084, 89 L.Ed.2d 251 at 261 (1986). However, accepting Plaintiffs' allegations as true for the purposes of this Motion, and absent other

evidence Defendants state they could proffer to rebut Plaintiffs' claim, this Court finds that a cause of action upon which relief could be granted has been stated under the *Whitley* standards.

## V. MOTION FOR MORE DEFINITE STATEMENT

Defendants also filed a motion, in the alternative to dismissal, for a more definite statement pursuant to Fed.R.Civ.P. Rule 12(e). Federal courts grant such a motion based on unintelligibility and not a lack of detail. *Wood & Locker, Inc. v. Doran and Associates,* 708 F.Supp. 684 at 691 (W.D.Pa. 1989). For purposes of Rule 12(e), the complaint is deemed sufficient if the defendant is able to respond, even if only with a "simple denial, in good faith and without prejudice." *Id.* In this case, the allegations which survive dismissal are more than adequate to inform Defendants of the scope of Plaintiffs' allegations and to allow Defendants to respond, even if only with a "simple denial." Therefore, Defendants' Motion for a More Definite Statement is denied.